IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
THOMAS W. THRASH JR.
U. S. D. C.  Atlanta

AUG 1 8 2003

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

VINCENT MARTIN, et al., on behalf
of themselves and all other disabled
persons similarly situated,

    Plaintiffs,

      v.

METROPOLITAN ATLANTA
RAPID TRANSIT AUTHORITY, et
al.,

    Defendants.

CIVIL ACTION FILE

NO. 1:01-CV-3255-TWT

## ORDER

This is an action against the Metropolitan Atlanta Rapid Transit Authority for violating the Americans With Disabilities Act.  As the prevailing parties, the Plaintiffs seek an award of attorney's fees in their Motion for Attorneys' Fees and Expenses [Doc. 47].  For the reasons set forth below, the Court grants the motion in a reduced amount.

## I. BACKGROUND

This suit challenges the extent to which the Metropolitan Atlanta Rapid Transit Authority ("MARTA") complies with its duty to accommodate riders with disabilities.  It was brought under the Americans With Disabilities Act ("ADA"), 42



U.S.C. § 12101, et seq., and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, et seq. The suit was brought by five named plaintiffs. In their Complaint, the Plaintiffs alleged that MARTA: (1) failed to make adequate information available to patrons in accessible formats; (2) failed to train adequately its employees regarding the requirements of the ADA; (3) failed to maintain adequately wheelchair lifts and ensure that buses with broken lifts were taken out of service and promptly repaired; (4) failed to provide adequate alternative transportation to stranded passengers in the event of a broken wheelchair lift; (5) failed to ensure that wheelchair lifts were properly deployed upon request; (6) failed to make required stop announcements; (7) failed to provide requested paratransit service on a consistent basis; and (8) required paratransit riders to endure long waits, late pickups, missed pickups and long rides, thereby suppressing the demand for paratransit service.

After discovery, Plaintiffs moved for a preliminary injunction. Both parties submitted extensive affidavit evidence on the motion. The Court heard a day of testimony on June 3, 2002, and an additional half day of argument on August 5, 2002. At the initial hearing, Plaintiffs amended their motion for preliminary injunction by adding a claim for relief regarding elevator malfunctions in MARTA's rail stations. On October 7, 2002, the Court issued a written Order finding that Plaintiffs had

-2-

proven they were entitled to injunctive relief on every concern addressed by their motion, with the exception of the concern regarding malfunctioning elevators.

At the direction of the Court, the parties then conferred in an effort to reach agreement upon the terms of relief.  Most issues were resolved by agreement.  The Court then resolved the issues where there was disagreement.  The Court then issued an Order granting extensive relief designed to bring MARTA into compliance with the accommodation requirements of the ADA.  In this motion, the Plaintiffs seek attorney's fees and expenses in the amount of $348,380.74.

## II. DISCUSSION

Section 505 of the Americans With Disabilities Act provides that "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs. . . ." 42 U.S.C. § 12205.  Under the ADA, the enforcement of the statute by plaintiffs as private attorney generals is an important part of the underlying policy behind the law. Therefore, like other fee shifting statutes, the statute is interpreted broadly because it is remedial in nature and facilitates private enforcement of civil rights.  Williams v. City of Fairburn, Ga., 702 F.2d 973, 976 (11th Cir. 1983).  Although awarding attorney's fees is within the discretion of the trial court, such discretion is a narrow

one in that attorney's fees should be denied only when special circumstances would render an award unjust, Solomon v. City of Gainesville, 796 F.2d 1464, 1466 (11th Cir. 1986), or the statute is being subverted into a ruse for providing "windfalls" to attorneys. Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983). Importantly, one need not succeed on all claims in order to obtain attorney's fees. Id.

A.    Prevailing Party

A party is not a prevailing party if it only "conceivably could benefit" from the court's judgment. Barnes v. Broward County Sheriff's Office, 190 F.3d 1274, 1278 (11th Cir. 1999). There must exist evidence that the court's judgment "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111 (1992). Thus, a party that succeeds on the merits nonetheless is not a prevailing party for the purpose of attorney's fees if it does not directly benefit from the court's order at the time it is rendered. See Hewitt v. Helms, 482 U.S. 755, 763-64 (1987) (noting that plaintiff was not prevailing party because he did not directly benefit from final judgment at the time it was entered). To be a prevailing party for purposes of attorney's fees, the plaintiff "need only prevail on one significant issue." Ruffin v. Great Dane Trailers, 969 F.2d 989, 992-93 (11th Cir. 1992). It is undisputed that the

-4-

Plaintiffs are a prevailing party in this action. Therefore, with this threshold met, the Court now turns to the task of calculating a reasonable attorney's fees award.

B.     The Loadstar Amount

Plaintiffs seek a total attorney's fee award of $348,380.74 which consists of $342,909.88 for attorney's fees and $5,470.86 in expenses. MARTA opposes the motion. It argues that this Court should drastically reduce Plaintiffs' request for attorney's fees on grounds that Plaintiffs' counsel have failed to describe their expenditures with the required particularity and that the Plaintiffs' counsel have failed to exercise "billing judgment."

In Hensley v. Eckerhart, 461 U.S. 424, 433-37 (1983), and Blum v. Stenson, 465 U.S. 886, 896-97 (1984), the Supreme Court established the framework and methodology for calculating the amount of a reasonable attorney's fee award. The starting point for calculating reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorneys' services. Hensley, 461 U.S. at 433; Blum, 465 U.S. at 897; accord ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). This produces the "lodestar" amount. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986). After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the

necessity for an adjustment based upon the results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).

The fee applicant is the party that "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Id. at 1303; ACLU v. Barnes, 168 F.3d at 427; accord Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc., 207 F.3d 1247, 1252 (11th Cir. 2000).

> That burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

ACLU v. Barnes, 168 F.3d at 427 (quotation marks and citations omitted). These obligations of the fee applicant are especially important in cases where the applicant has only partially succeeded in the suit. Hensley, 461 U.S. at 437.

Similarly, a party opposing a fee application also has obligations.   Its objections and proof must be specific and "reasonably precise." Id. at 428.  When the parties fulfill their obligations, this assists the court in fulfilling its duty to render an order that articulates both its decisions and reasons for the decisions, thus allowing for meaningful appellate review.  Id. at 428-29; see also Coastal Fuels, 207 F.3d at 1252 ("[W]e have said that a court's order on attorney's fees must allow meaningful appellate review."); N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1335 (11th Cir. 1987) ("A prerequisite for our review of an attorney's fee award is that the district court's opinion must have explained the reasons for the award with 'sufficient clarity to enable an appellate court to intelligently review the award.'").

   1.   Reasonable Hourly Rate

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." Norman, 836 F.2d at 1299.  Reasonable hourly rates are to be measured by the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984).  Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Id. at 895 & n.11; ACLU v. Barnes, 168 F.3d at 436.  The applicant attorney's customary billing rate for fee-paying

-7-

clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive. Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'"); see also National Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm."). A fee applicant also may provide opinion evidence of reasonable rates, which is commonly done by submitting affidavits of other attorneys in the relevant legal community. Duckworth v. Whisenant, 97 F.3d 1393, 1396-97 (11th Cir. 1996). Finally, the court may utilize its own personal experiences and expertise to assess the lawyering skills exhibited during the pendency of the case. Id. at 1397 ("This court has also been given ample opportunity to assess the lawyering of this case for the Plaintiff."). But the court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and record support. N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1334-36 (11th Cir. 1987).

Plaintiffs' counsel have submitted their own affidavits to support the hourly rates claimed in the motion. They have also submitted the affidavits of other experienced attorneys who have testified that the hourly rates are reasonable.

MARTA has not challenged the hourly rates put forth by Plaintiffs in this case, or at least not with such specificity to alert the Court that any reduction is warranted. Accordingly, the hourly rates claimed in the motion are deemed reasonable.

2.    Reasonable Hours

"Fee applicants must exercise what the Supreme Court has termed 'billing judgment.'" ACLU v. Barnes, 168 F.3d at 427. This means that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" because, for example, the case is overstaffed. Hensley, 461 U.S. at 434. Work performed by multiple attorneys, however, is not subject to reduction where the attorneys were not unreasonably doing the same work. Jones v. Central Soya Co., 748 F.2d 586, 594 (11th Cir. 1984); Johnson v. University College of University of Alabama, 706 F.2d 1205, 1208 (11th Cir. 1983).

As to the work performed, compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorney's fees. See City of Riverside v. Rivera, 477 U.S. 561, 573 n.6

(1986) (allowing compensation for productive attorney discussions and strategy conferences); Webb v. Board of Educ. of Dyer County, Tenn., 471 U.S. 234, 243 (1985) (allowing compensation for pre-litigation services in preparation of suit); Cruz v. Hauck, 762 F.2d 1230, 1233-34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request); Adams v. Mathis, 752 F.2d 553, 554 (11th Cir. 1985) (holding that measures to enforce judgment are compensable); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 & n.5 (2d Cir. 1983) (allowing compensation for background research and reading in complex cases); Brewster v. Dukakis, 544 F. Supp. 1069, 1079 (D. Mass. 1982) (compensating for negotiation sessions), aff'd as modified, 786 F.2d 16, 21 (1st Cir. 1986); In re Agent Orange Product Liability Litigation, 611 F. Supp. 1296, 1321-48 (E.D.N.Y. 1985) (compensating routine activities such as telephone calls or reading mail that contribute to the litigation). Reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis, although the rate may be reduced if no legal work was performed during travel.  Johnson, 706 F.2d at 1208.  As with attorneys' work, the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney.  Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989); Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988).  In short,

"with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988" and "the standard of reasonableness is to be given a liberal interpretation." N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1337 (11th Cir. 1987) (quoting Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983)).

The Eleventh Circuit has stated that its decisions regarding attorney's fees "contemplate a task-by-task examination of the hours billed" and that applicants should "show the time spent on the different claims." ACLU v. Barnes, 168 F.3d at 427, 429. The Eleventh Circuit has also stated that where a fee application and supporting documents are voluminous, a district court is not required to engage in an hour-by-hour analysis of the fee award. Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). In such cases, it is sufficient for the district court to determine the total number of hours devoted to the litigation and then reduce that figure by an across-the-board percentage reduction if such a reduction is warranted. Id. The Eleventh Circuit has even intimated that such a method may be the preferred course with a voluminous fee request to avoid waste of judicial resources. Id. The Supreme Court has also stated:

> The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

Hensley, 461 U.S. at 436-37; accord Popham v. City of Kennesaw, 820 F.2d 1570, 1579-81 (11th Cir. 1987) ("[T]he Supreme Court explicitly stated that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims.").

The supporting documentation initially filed by Plaintiffs with the motion did not allow the Court to perform the task-by-task analysis suggested by Eleventh Circuit caselaw. The Plaintiffs submitted time records for six attorneys who worked on the case. The time records consist of a chronological listing of the tasks performed by counsel in the case. There are 778 individual entries in the time records. Many of the fee entries submitted by Plaintiffs' counsel contain several different activities grouped together as one entry, making it difficult to decipher how much time was spent on each individual activity. Many of the billing entries by Plaintiffs' counsel name individuals with whom counsel communicated, but fail to specify who some of those individuals are and what role they played in this case. Without this information it is impossible for the Court to determine if those communications are necessary and

reasonable, or even directly related to issues in this case. Only Mr. Norris provided a summary of his time broken down by general categories. There was no overall summary of the time Plaintiffs' attorneys devoted to the various stages of the litigation such as initial investigation, drafting the complaint, initiating discovery, responding to discovery, prehearing preparation, etc. The only summary provided in the initial filing was a breakdown of total hours by the six attorneys involved. The summary did not even provide a total for the hours expended on the case. Multiplying their hourly rates by the hours expended for each attorney and paralegal, the summary sought $310,601.50 (not broken out from the total) as compensation for fees plus $4,510.66 in expenses. Due to the absence of adequate summaries in the Plaintiffs' initial filing, the Court could not have undertaken a task-by-task analysis of the reasonableness of the hours recorded in the voluminous time records.

The Defendants objected to the fee request on numerous grounds. First, they objected on the grounds that the Plaintiffs' attorneys failed to describe their time with the required particularity. Second, the Defendants objected on the grounds that Plaintiffs' counsel had not exercised billing judgment. In support of these objections, the Defendants provided the Court with a summary of activities with the hours claimed and a spreadsheet with specific objections to the individual entries in the time records. In all, the Defendants objected to about half of the time claimed by the

Plaintiffs. The net effect in dollars would require a lengthy computation which the Court has not performed.

The Plaintiffs responded by going through MARTA's spreadsheet and responding to the individual objections. Still, no summary of time on a task-by-task basis was provided. In a number of instances, the Plaintiffs responded by withdrawing or reducing the time originally claimed. For example, the Plaintiffs withdrew time expended on media relations. The Plaintiffs then submitted another extremely confusing one page summary seeking a total award of $348,380.74 for attorney's fees and expenses. This included some amount of time at half rate for responding to the Defendants' objections. The exact additional amount might be determined by lengthy calculations which the Court has not attempted to perform.

It appears to the Court that the Plaintiffs have responded appropriately to the Defendants' specific objections. The Defendants' general objections to the time of Leigh Anne Clark, the time for pre-filing investigation, the time for status conferences, the time for the motion for class certification, the time for the unsuccessful faulty elevator claim and the time for preparing the initial submission are without merit. The Defendants' objections that the case was overstaffed and that there was unreasonable duplication of work by multiple attorneys is well taken. In

-14-

particular, there was enormous overlap between the time claimed by Joshua H. Norris and Leigh Anne Clark.

Where a litigant submits a fee application that is too consolidated and vague to permit the district court to determine whether the hours claimed were reasonably spent, that applicant runs the risk that the fees sought will be reduced by the court. Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 327 (5th Cir.), cert. denied, 516 U.S. 862 (1995). In making such a downward adjustment, courts frequently have reduced entire fee applications, or portions thereof, by a stated percentage to accommodate for excessive vagueness, or to address some other deficiency, such as redundant time entries, failure to exercise billing judgment, or excessive numbers of hours sought. Mallinson-Montague v. Pocrnick, 224 F.3d 1224, 1235 (10th Cir. 2000); George v. GTE Directories Corp., 114 F. Supp. 2d 1281, 1292-93 (M.D. Fla. 2000).

To enable the Court to calculate lodestar, the movant must demonstrate not only that the claimed hours were actually expended, but also that the applicant has exercised "billing judgment" and made a good faith effort to exclude from a fee request any hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude such hours from his fee submission to his client. Hensley, 461 U.S. at 440. Thus, Plaintiffs' counsel were

required to exclude those hours from their fee application "that would be unreasonable to bill a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301.

To recover for tasks performed by more than one attorney, the burden is on Plaintiffs' counsel to show that the time spent by each attorney "reflects the distinct contribution of each lawyer and [is] the customary practice of multiple-lawyer litigation." ACLU v. Barnes, 168 F.3d at 432. Plaintiffs have not met that burden in this case. The Court has carefully reviewed the billing requests made by Plaintiffs and the objections made by Defendants. Without further specification, the Court believes that the billing records submitted by Plaintiffs fail to indicate the distinct contributions each of their attorneys made at certain stages of the litigation. The hours billed for many activities appear to be excessive or redundant. While each of Plaintiffs' counsel submits his or her sworn affidavit stating that the fee itemization accurately reflects the time required to perform those activities, this is insufficient by itself to establish counsel's entitlement to those hours. Id. at 430. It appears to the Court that the fee request should be reduced by twenty-five percent due to overstaffing, unreasonable duplication of effort and failure to exercise billing judgment. The Court is forced to resort to a percentage reduction because the submissions of the parties do not allow a task-by-task analysis without an

unreasonable investment of further time and judicial resources in this matter. The final fee request is for $342,909.88 in fees plus $5,470.86 in expenses. The fee portion will be reduced by twenty-five percent to $257,182.41. Therefore, the loadstar amount is $262,653.27.

### 3.   Adjustment to the Lodestar

Once the lodestar is obtained, the court may then adjust it upwards or downwards. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Blum v. Stenson, 465 U.S. 886, 897 (1984); ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). The Supreme Court and Eleventh Circuit have stated that while the adjustment may be based on a number of factors, the most important factor is the results obtained. Hensley, 461 U.S. at 434; Norman, 836 F.2d at 1302. The Supreme Court has warned, however, that upward adjustments are rarely warranted because the factors on which a prevailing party typically seeks an enhancement already have been considered by the court in determining the reasonable hourly rate:

> Expanding on our earlier finding in Hensley that many of the Johnson factors "are subsumed within the initial calculation" of the lodestar, we specifically held in Blum that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar

-17-

amount, and thus cannot serve as independent bases for
increasing the basic fee award.

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 566
(1986).

Plaintiffs contend that they are entitled to an unspecified enhancement because
of the exceptional results and public benefit achieved by the ruling. However, the
Court must deny Plaintiffs' request for an upward adjustment. Both the Supreme
Court and the Eleventh Circuit have held that the fact that the results obtained would
be of far-reaching significance to a large number of people usually is not grounds for
enhancement. The results obtained, as one of the Johnson factors, normally will be
subsumed in the calculation of a reasonable fee and, therefore, usually should not
provide an independent basis for increasing the fee award. Blum v. Stenson, 465 U.S.
886, 900 (1984); accord N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1337
(11th Cir. 1987). "Exceptional results are results that are out of the ordinary, unusual,
or rare. Ordinarily, results are not exceptional merely because of the nature of the
right vindicated or the amount recovered." Norman v. Housing Authority of the City
of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). In this case, there are two
reasons not to enhance Plaintiffs' attorney's fee award for exceptional results.

First, no new substantive law was created in this case. The Court granted Plaintiffs preliminary injunctive relief based on existing law established by numerous, comprehensive federal regulations that interpret the ADA, and several cases where other public transit systems met similar, and sometimes identical, challenges. The Court's decision did not break new ground, but simply followed Supreme Court and Eleventh Circuit precedent. Second, the mere fact that the relief obtained by Plaintiffs benefitted the public is not enough, in and of itself, to warrant an enhancement of the lodestar amount. Thus, the Court must deny Plaintiffs' request to enhance the lodestar amount. On the other hand, the degree of success and benefit to the public do warrant the award of the full loadstar amount.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Attorneys' Fees and Expenses [Doc. 47] is GRANTED in the reduced amount of $262,653.27. The Clerk is directed to enter a supplemental judgment in favor of Plaintiffs against MARTA in this amount and for post judgment interest at the legal rate from May 19, 2003. See Georgia Ass'n of Retarded Citizens v. McDaniel, 855 F.2d 794, 799 (11th Cir. 1988).

-19-

SO ORDERED, this __18__ day of August, 2003.

THOMAS W. THRASH, JR.
United States District Judge