IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VINCENT MARTIN, et al., on behalf
of themselves and all other disabled
persons similarly situated,

    Plaintiffs,

     v.

METROPOLITAN ATLANTA
RAPID TRANSIT AUTHORITY, et
al.,

    Defendants.

CIVIL ACTION FILE

NO. 1:01-CV-3255-TWT

## OPINION AND ORDER

This is an action under the Americans With Disabilities Act. It is before the Court on the Plaintiffs' Motion to Order the Defendants to Show Cause Why They Should Not be Held in Contempt [Doc. 102]. For the reasons set forth below, the Motion is GRANTED.

## I. Background

On November 28, 2001, the Plaintiffs brought an action for injunctive and declaratory relief against the Metropolitan Atlanta Rapid Transit Authority ("MARTA"). They brought their claims pursuant to the American with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"), alleging a

system-wide pattern and practice of discrimination against people with disabilities by the Defendants. On December 24, 2002, this Court entered an Order granting a preliminary injunction against MARTA.[1] That Order required MARTA to take a variety of actions to bring its services in compliance with the ADA and the Rehabilitation Act. With regard to its Paratransit services, the Order required, *inter alia*, that MARTA make every effort to achieve and maintain an on-time performance rate of 100 percent, and that MARTA provide a sufficient number of Paratransit vehicles and operators so that all eligible persons requesting Paratransit services can receive it on a "next day" basis.[2] The Order also established that  MARTA must attempt to answer all Paratransit customers' telephone calls within three minutes and avoid placing a customer's call on "hold."[3]

The Court's initial Order has since been modified with the consent of the parties three times. On March 30, 2005, the Order's Disciplinary Guidelines were amended.[4] Then, on July 19, 2007, the Order was modified to address MARTA Paratransit's on-time performance.[5] That amendment required that MARTA follow the

---

[1]Order Granting Preliminary Injunction [45].

[2]Id. at 14, 16.

[3]Id. at 16.

[4]Order of March 30, 2005 [75].

[5]Order of July 19, 2007 [95].

recommendations of a third-party consultant, TranSystems.[6] Based on TranSystems's finding that MARTA Paratransit's on-time performance rate had continued to decline despite the 2002 Preliminary Injunction, MARTA agreed to add a provision to the Order that specified a certain number of Paratransit vehicles and operators that were to be made available in 2007 and 2008.[7] Finally, on June 25, 2014, upon an understanding that the Defendants had put in place certain procedures and processes that brought them in compliance with several of the injunction's provisions, the Order was amended to release the Defendants from certain requirements.[8] However, MARTA's obligations with regard to its Paratransit services remained largely the same. Importantly, the current Order still requires that MARTA make every effort to achieve and maintain an on-time performance rate of 100 percent, and that MARTA must provide a sufficient number of Paratransit vehicles and operators.

On May 13, 2015, the Plaintiffs moved for an order requiring the Defendants to show cause why they should not be held in contempt. The Plaintiffs allege that the Defendants are violating the Paratransit provisions of the Order. The Defendants, however, argue that MARTA has made substantial progress to remedy deficiencies

---

[6]Id. at 4-5.

[7]Id.

[8]Order of June 25, 2014 [101], at 1-2.

in its Paratransit system, and that this effort is sufficient to be in compliance with the Order.

## II. Discussion

"Injunctions, including consent decrees, . . . are enforced through the trial court's civil contempt power."[9] To succeed, a petitioner "must [first] establish by clear and convincing evidence that the alleged contemnor violated [a] court's order."[10] Once this prima facie showing of a violation is made, the burden shifts to the respondent "to produce evidence explaining his noncompliance" at a "show cause" hearing.[11] At the show cause hearing, the respondent is allowed to show either that he did not violate the court order or that he was excused from complying.[12] The respondent may be excused because of an "inability" to comply with the terms of the order.[13] To satisfy this burden, the respondent must "offer proof beyond the mere assertion of an

---

[9]Reynolds v. Roberts, 207 F.3d 1288, 1298 (11th Cir. 2000) (citation omitted).

[10]United States v. Roberts, 858 F.2d 698, 700 (11th Cir. 1988) (citation omitted).

[11]Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991).

[12]Chairs v. Burgess, 143 F.3d 1432, 1436 (11th Cir. 1998).

[13]Id.

inability."[14] Instead, the respondent "demonstrate[s] an inability to comply only by showing that [he has] made 'in good faith all reasonable efforts to comply.'"[15]

Here, the Plaintiffs have clearly stated a case of non-compliance. First, they have cited provisions in the Preliminary Injunction that require, *inter alia*, that MARTA Paratransit make every effort to achieve and maintain an on-time performance rate of 100 percent, that MARTA Paratransit attempt to answer all customer telephone calls within three minutes and avoid placing a customer's call on "hold," and that MARTA provide a sufficient number of prepared Paratransit vehicles and operators so that all eligible persons requesting the Paratransit service can receive it on a "next day" basis. Next, they have provided sufficient evidence that MARTA Paratransit's on-time performance rate has actually decreased since 2002, that, in the first two quarters of 2015, MARTA's average delay in answering mobility reservation telephone calls was over four minutes, and that MARTA has failed to provide an adequate number of Paratransit vehicles and operators, despite an increase in MARTA Paratransit's ridership.

In response, the Defendants initially contend that, under the June 24, 2014 modification of the Preliminary Injunction, the Plaintiffs agreed to first attempt to

---

[14]Id. (quoting Watkins, 943 F.2d at 1301).

[15]Id. (quoting Watkins, 943 F.2d at 1301).

resolve any disputes with the Defendants by informally meeting. And, according to the Defendants, if the parties were unable to resolve the dispute through meetings, then the parties were to use an alternative dispute resolution method. They argue that the Plaintiffs have failed to adhere to this informal resolution process by filing the instant motion. This Court disagrees.  According to the Plaintiffs, the parties have met several times prior to filing this Motion in an attempt to resolve the present dispute.[16] And, more importantly, the 2014 Order modifying the Preliminary Injunction specifically stated that "the parties *may choose* to submit the complaint to mediation or arbitration . . . ."[17] Thus, the Plaintiffs were not obligated to seek an alternative dispute resolution method prior to filing their Motion.

Next, the Defendants argue that MARTA has met the Preliminary Injunction's requirements. They first point to the fact that MARTA has increased its number of Paratransit vehicles and operators since 2007. Specifically, the Defendants note that as of June 2015, 217 Paratransit vehicles were available for service and 320 Paratransit operators were working for MARTA.[18] But, as the Plaintiffs note in their Reply Brief, MARTA's quarterly ADA Compliance Reports for the first three quarters

[16]Pls.' Reply Br., at 2-3.

[17]Order of June 25, 2014 [101], at 21.

[18]Defs.' Resp. Br., at 13.

of 2015 demonstrate the actual average number of operators and vehicles in service are much lower. For example, in the first quarter of 2015, the average number of Paratransit vehicles in service for weekdays was 154 and the average number of operators who worked daily was 173.[19] Moreover,  when using the Federal Transit Administration's definition of a trip denial, MARTA's trip denial percentage in 2014 was 9.37%.[20] Thus, while MARTA may have increased its number of Paratransit vehicles and operators, this increase is not sufficient to demonstrate that the Defendants are complying with this Court's Order that MARTA provide a sufficient number of Paratransit vehicles and operators so that all eligible persons requesting the Paratransit service can receive it on a "next day" basis.

The Defendants then contend that MARTA has actually provided accommodations to Paratransit riders that are not required by the ADA, and that these accommodations have adversely affected MARTA's on-time performance rate. They note that these additional accommodations include allowing customers to request a Paratransit trip with less than 24 hours' notice and providing its Paratransit service beyond the boundaries of the corridors defined by a Department of Transportation's regulation. While these are helpful accommodations, they do not excuse MARTA

---

[19]Pls.' Reply Br., Ex. C-6.

[20]Ates Decl. ¶ 21.

Paratransit's declining on-time performance rate. The Defendants must still make their best efforts to increase their on-time performance rate to 100 percent. An 81.5 percent on-time performance rate for first quarter of 2015[21] is sufficient evidence that MARTA is not complying with this instruction.

Finally, the Defendants contend that because MARTA is currently exploring proposals to outsource its Paratransit service to a third-party, the Court should deny the present Motion, as it might have a chilling effect on third-party bidders or adversely affect the proposal process in general. This Court disagrees for several reasons. First, the recent request for proposals does not mean that MARTA will ultimately outsource its Paratransit service. In the meantime, MARTA must still make efforts to comply with the Preliminary Injunction. Second, even if the Paratransit service is outsourced, the Plaintiffs contend that MARTA will continue to operate its telephone reservation system, which, based on the evidence presented, is not currently functioning at the standard laid out in the Order.[22] Third, at this stage, the Plaintiffs must only show that the Preliminary Injunction has been violated. Once this showing of non-compliance has been made, the burden shifts to the Defendants to produce evidence explaining their non-compliance at a show cause hearing. Consequently, the

---

[21]Pls.' Mot. to Show Cause, Ex. A-6, at 5.

[22]See id. at 3 (noting the average answer delay for MARTA mobility reservation was over four minutes in the first quarter of 2015).

Defendants' argument concerning the potential outsourcing of MARTA's Paratransit service is more appropriate for a show cause hearing than for the instant Motion.

### III. Conclusion

For these reasons, this Court GRANTS the Plaintiffs' Motion to Order the Defendants to Show Cause Why They Should Not be Held in Contempt [Doc. 102]. After a reasonable time for discovery, the Court will schedule an evidentiary hearing on the contempt motion.

SO ORDERED, this 16 day of November, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge